IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | | |
|---|---|---|
| MUSIC CITY COACH, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3 10 0115 |
| | ) | |
| STAR CITY COACH WORKS, LTD., | ) | Judge Trauger |
| | ) | |
| Defendant, | ) | |

### ~~PROPOSED~~ JOINT INITIAL CASE MANAGEMENT ORDER

Pursuant to Local Rule 16.01 (d), and as evidenced by the signatures of counsel below, the parties submit the following proposed initial case management report in accordance with this Court's instructions at the initial case management conference held on April 8, 2010 at 1:00 P.M.

**I. Jurisdiction and Venue**

This Court has jurisdiction of Plaintiff's claim pursuant to 28 U.S.C. §1332 in that the amount in controversy exceeds the sum of $75,000.00 exclusive of interest and costs and is between citizens of different states or subjects of a foreign state.

Plaintiff alleges that venue is proper for this action pursuant to 28 U.S.C. § 1391(a) in that the Plaintiff is a Tennessee corporation authorized to operate within the State of Tennessee with its principal place of business located in Sumner County, Tennessee; a substantial portion of the acts and events giving rise to this action occurred in Sumner County, Tennessee; the oral contract at issue in this action was formed in whole or in part in Sumner County, Tennessee; and the damage being suffered due to the Defendant's alleged wrongful actions is being suffered in Sumner County, Tennessee, within this judicial district.

1

Defendant has disputed the Court's jurisdiction over it and has also argued that venue in this District is improper. Defendant has not filed an Answer; however, on March 1, 2010, Defendant filed a Motion to Dismiss or in the Alternative to Transfer Venue (Docket Entry # 24). Plaintiff filed its response in opposition to Defendant's motion on March 15, 2010 (Docket Entry # 26). The Court denied Defendant's motion to dismiss based on lack of jurisdiction and Defendant's motion for transfer of venue to the Western District of Virginia on April 2, 2010 (Docket Entry #31). While Defendant respects the judgment of the Court, Defendant does not concede any of the issues raised in its motion (Docket Entry #24).

## II. Status of Service

The Court's April 2, 2010 order (Docket Entry #31) held that service of process has been completed on Defendant.

## III. Parties' Theories of the Case

### A. Plaintiff Music City Coach, Inc.

This action is brought in part pursuant to 28 U.S.C. §1332, *et seq*., requesting declaratory judgment by this Court concerning the rights, remedies and obligations between the Plaintiff and Defendant, in regards to the contractual relationship between the parties as it relates to the refurbishment, modification, and conversion of the interior of a Prevost "H3-45 Triple Slide" bus (hereinafter referred to as the "bus") owned by the Plaintiff.

In 2008 the Plaintiff purchased the bus for $627,756.00. In September 2008, the Plaintiff and the Defendant entered into an oral contract, pursuant to which the Defendant would refurbish and "convert" the interior of the bus per the Plaintiff's specifications in exchange for payment of $325,000.00. Thus, the Plaintiff's total cost of the bus, including purchase price and improvements, came to almost one million dollars. The payment amount was to be paid in three (3) equal payments, referred to as "draws." The final payment by the Plaintiff was not due until

completion of the project. The completion date for the conversion was agreed to be June, 2009. Because the Plaintiff had already secured a lease agreement for the bus for after the conversion was complete, the parties specifically agreed that time was of the essence in the Defendant's performance and completion of the work on the bus.

The Plaintiff sent the first two "draw" payments of $108,333.33 each to the Defendant upon the Defendant's misrepresentation that the project was proceeding as agreed, according to schedule. In August of 2009, the Defendant admitted it was behind in the completion of the conversion of the bus interior, and despite the contractual terms that stipulated that the final payment by the Plaintiff was not due until completion of the project, the Defendant requested that more money be advanced so that the Defendant could finish the project. The Plaintiff, needing to complete the bus conversion project so it could meet its lease obligation for the bus, had no choice but to comply with the Defendant's demand by sending the additional money, despite the fact that no further money was contractually due until the Defendant had completed the project.

Despite the additional funds advanced by the Plaintiff specifically for completion of the project, upon inquiry by Plaintiff, the Defendant admitted that it lacked the funds necessary to complete the project, was suffering from a business cash flow deficiency, and would not be able to complete the project until it could get additional funds necessary to pay the vendors for the missing components and pay the labor charges associated with completion of the project. As an emergency stop-gap measure, the Plaintiff offered to provide labor so that the project could get finished, though it remained the contractual obligation of the Defendant. Because of the Defendant's failure to perform this work, the Plaintiff had to bear the cost of labor and components that his employees had installed in the bus, all of which should have been provided by the Defendant per the parties' agreement.

3

As further evidence of the Defendant's financial desperation, the Defendant began taking parts and components from the bus because it needed them for other bus projects. When this happened, Mark T. Caldwell, Sr., Defendant's Chief Executive Officer, stated that he would replace the part on the Plaintiff's bus, but he never did. At that time, except for the Plaintiff's employees providing labor for the bus conversion, the Defendant had prevented the Plaintiff from having any access to the Plaintiff's bus and prevented the Plaintiff from being able to inspect the bus. The Defendant refused to accept and/or to respond to direct communications from the Plaintiff regarding the status of the bus completion or when or even if the Plaintiff may take physical possession of the bus.

On February 2, 2010, Caldwell met with the employees performing the labor on the bus and informed them that he was likely to shut the bus conversion project down that day at noon. The employees performed no further work. At that time, the bus conversion project was approximately ninety-five percent (95%) complete. Subsequently, a Temporary Restraining Order was issued giving Plaintiff possession of the bus so that it could complete the conversion for delivery to the Lessees.[1]

As a direct and proximate result of the defendant's actions and breach of its contractual obligations to the Plaintiff, the Plaintiff has suffered, and continues to suffer, monetary damages including but not limited to loss of profits, as well as damage to its business reputation and customer goodwill, for which the Defendant is liable.

As such, this action is brought for damages resulting from the Defendant's breach of contract, conversion of property, fraudulent or negligent misrepresentation and promissory fraud.

### B. Defendant Star City Coach Works, Ltd.

Defendant's major disputes with Plaintiff's theory of the case are as follows:

4

1. The production delays on this project were caused by Plaintiff's failure to make agreed-upon payments at the agreed-upon schedule.

2. After making the second "draw" payment, Plaintiff directed Defendant to apply funds from that draw to unpaid invoices for other projects that Plaintiff had engaged Defendant to complete. This clawback of the second draw payment caused more further delays on this project.

3. The "cash flow deficiencies" which Defendant claimed were delaying the project were, in fact, the Plaintiff's failures to pay for the project as agreed.

4. Defendant allowed Plaintiff to send Plaintiff's employees to Defendant's facility to work on the project as an accommodation to Plaintiff so as to allow the project to advance toward completion without requiring immediate payment of funds owing on the project. Defendant would not allow Gaylon Moore in its facility because Mr. Moore had in the past caused mischief there, including attempting to recruit Defendant's employees to act as industrial spies.

5. Defendant did not remove any components from the motor coach in question with two exceptions. First, a muffler was removed so that a heat shield could be attached to it. The muffler was not put on another motor coach and it has been ready for reinstallation on the motor coach since shortly after the motor coach was seized. Second, a radiator fan was removed from the motor coach to be used on another project. This was done only with prior permission from Plaintiff and was, in fact, removed by one of Plaintiff's agents then present at Defendant's facility. Defendant had no objection to allowing Plaintiff's agents, aside from Mr. Moore, to monitor progress of the project at its facility.

---

[1] Plaintiff subsequently took possession of the bus and completed the conversion. The bus was delivered to the Lessee on or about March 25, 2010.

5

6. Defendant never represented that the project was complete. Rather, Defendant repeatedly informed Plaintiff that required materials could not be secured until Plaintiff made payments as previously agreed.

7. The motor coach that is the subject of this lawsuit was being customized for professional wrestler Paul Levesque (a/k/a "Hunter Hearst Helmsley," a/k/a "Triple-H") and his wife, Stephanie McMahon (hereinafter, collectively the "Levesques"). The Levesques are both employed by World Wrestling Entertainment, Inc. ("WWE") – Mr. Levesque as a wrestler and Mrs. Levesque as Executive Vice President, Creative Development & Operations. Plaintiff was to lease the completed coach to WWE for the Levesques to use. Plaintiff's employee, Terry Sims, was to drive the coach for the Levesques and acted as their agent – communicating some of their instructions to Defendant – during the customization process. When Plaintiff's funding problems became acute, Sims represented to Defendant that the Levesques and/or WWE would pay the remaining balance owing to Defendant on the project and Plaintiff, in turn, would deduct that payment from the lease payments that the Levesques and/or WWE would owe to Plaintiff once the coach was in service.

8. Plaintiff has disparaged Defendant in their industry and has damaged Defendant's reputation.

9. As a direct and proximate result of Plaintiff's actions and breach of its contractual obligations to the Defendant, Defendant has suffered, and continues to suffer, monetary damages including, but not limited to, loss of profits, as well as damage to its business reputation and customer goodwill, for which Plaintiff is liable.

**IV.    Identification of the Issues**

All matters regarding jurisdiction, venue, liability and damages remain at issue in this litigation.

### V. Schedule of Pretrial Proceedings

#### A. Mandatory Initial Disclosures

The parties shall make their Rule 26(a)(1)(A) through (E) disclosures on or before April 22, 2010.

#### B. Other Pretrial Discovery Matters

Deadline for completion of written and depose all fact witnesses on or before February 15, 2011. All written discovery shall be served sufficiently in advance to allow for a response in accordance with the rules on or before the deadline for completion of discovery. The response time for all written discovery and requests for admissions is thirty (30) days. Local Rule 33.01 is expanded to allow forty (40) interrogatories, including sub-parts. Discovery is not stayed during dispositive motions, unless ordered by the Court. No motions concerning discovery are to be filed until after the parties have conferred in good faith and, unable to resolve their differences, have scheduled and participated in a conference telephone call with Judge Trauger.

The parties have reached agreements on how to conduct electronic discovery. Thus, the default standard contained in Administrative Order No. 174 need not apply to this case.

### VI. Dispositive Motions

The parties shall file all dispositive motions on or before March 28, 2011. Any response shall be filed within twenty-one (21) days of the filing of the motion. Optional replies may be filed within fourteen (14) days of the filing of the response.

Briefs shall not exceed twenty (20) pages. No motion for partial summary judgment shall be filed except upon leave of court. Any party wishing to file such a motion shall first file a separate motion that gives the justifications for filing a partial summary judgment motion in terms of the overall economy of time and expense for the parties, counsel and the Court.

## VII. Other Deadlines

The parties shall file all Motions to Amend on or before November 15, 2010.

The plaintiff shall identify and disclose all expert witnesses and expert reports on or before December 3, 2010. The defendant shall identify and disclose all expert witnesses and reports on or before January 3, 2011.

The parties shall depose all expert witnesses on or before February 28, 2011.

The parties shall file a joint mediation report on or before February 2, 2011.

## VIII. Estimated Trial Time

The parties expect the trial to last approximately 3-4 days.

It is so **ORDERED**.

**Aleta A. Trauger**
**United States District Court Judge**

APPROVED FOR ENTRY:

/s/ Kevin H. Sharp
Kevin H. Sharp, BPR #016287
Bryan E. Pieper, BPR #016852
Christy L. Chalou, BPR #028384
DRESCHER & SHARP, P.C.
1720 West End Ave., Suite 300
Nashville, Tennessee 37203
(615) 425-7111
ksharp@dsattorneys.com